### PEOPLE v. SHARKEY.

(Supreme Court, Appellate Division, First Department. November 20, 1903.)

1. HOMICIDE—MANSLAUGHTER IN SECOND DEGREE—EVIDENCE—SUFFICIENCY.
    Evidence examined, and *held* sufficient to sustain a conviction of manslaughter in the second degree, death ensuing from unjustifiable assault by defendant on decedent with his fists.

Appeal from Trial Term, New York County.

Thomas F. Sharkey was convicted of manslaughter in the second degree, and appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Henry W. Unger, for appellant.
Robert C. Taylor, for the People.

LAUGHLIN, J. The defendant was indicted for manslaughter in the first degree for causing the death of Nicholas Fish by a blow with his fist. The scene of the assault was Erhardt's Café, which is on the northerly side of Thirty-Fourth street, one or two doors east

of Eighth avenue. The café consists of a ladies' restaurant to the east, with an entrance from Thirty-Fourth street, and a barroom to the west, likewise having an entrance from Thirty-Fourth street. In front of both entrances there is a paved areaway some feet in width, two steps below the sidewalk, with a step forming an approach to the sidewalk. On the afternoon of the 15th of September, 1902, the defendant entered the café and sat down at a table in the corner of the restaurant with three women. The defendant was not acquainted with the decedent, but the women were all friends of his, and one of them (Mrs. Philips) was a particular friend. He had visited her the evening before, and was arrested at her apartments between 2 and 3 o'clock the morning after the alleged assault. One of the women called defendant over, and introduced decedent to him under the name of Brown. The five had one or two rounds of drinks together. At this point the first conflict in the evidence arises. It is conceded that a few minutes later the decedent passed out of the exit to the ladies' restaurant; that the defendant passed out the barroom exit, and, turning to the left, encountered the decedent as the latter was stepping up from the areaway to the sidewalk, and that the decedent fell back into the areaway striking his head, and causing laceration of the tissues of the brain and a hemorrhage of the brain, from which death ensued within a few hours. The evidence is conflicting as to what occurred between the parties immediately before they left the café and when they met outside. It is undisputed that the decedent was under the influence of liquor, and the evidence indicates that the defendant had been drinking before he entered the café. The defendant testified in his own behalf, and according to his testimony the decedent assaulted him without cause in the café, and again as they met outside, and he merely put up his arms or hands to protect himself, and decedent fell from the force of a blow inflicted upon defendant, or from resistance offered by defendant. The people gave evidence tending to show, and sufficient to justify the jury in finding, that defendant and decedent finally "had words" in the café; that they were standing up facing each other, and their discussion became so loud that the bartender interfered, and asked them both to "please go out," and they both apologized to the bartender, who then escorted the decedent to the exit from the ladies' restaurant; that in the meantime two of the women departed, but Mrs. Philips remained, and he and she went into the barroom, he evidently trying to leave by the barroom exit, and she trying to hold him, and endeavoring to detain him; that the defendant finally pushed her away, and rushed or walked quickly out bareheaded, and upon reaching the sidewalk turned to the left toward Seventh avenue, and stopped either on the sidewalk at the edge of the step or with one foot on the step descending towards the ladies' entrance, and confronted the decedent, who had one foot on the step, and was passing from the areaway onto the sidewalk at the ladies' exit, and, making some remark, struck and delivered a swinging blow with his fist upon the left eye, which caused the decedent to fall backward as already stated; that the defendant then, after seeing decedent fall, ran or walked back into Gomerford's saloon at the northeasterly corner of Eighth

avenue and Thirty-Fourth street; that decedent came out slowly, with his hands at his sides, and did not assume a belligerent attitude, or make any effort to strike the defendant, or say anything to him. The defendant was 47 years of age and the decedent 56. Some of the witnesses, including defendant, speak of the decedent as an old man, and one witness speaks of the defendant as the larger man. The cause of the trouble between the defendant and the decedent is not clear, and is left largely to inference. Mrs. Philips and one of the other women were not sworn. The bartender testified that he had frequently seen Mrs. Philips in the café with the defendant, but he had never seen her there with anybody else. According to the testimony of the bartender, the defendant saw Mrs. Philips before sitting down alone, but defendant denies this. One of the officers who arrested defendant testified that defendant told him he had an altercation with a man at Erhardt's, and hit him, and said the officer would have done the same under the circumstances. If, as defendant claims, he intended, on leaving the café to go over to Broadway, his nearest exit was the exit from the ladies' restaurant, toward which the bartender was assisting the decedent. He could have readily passed out that exit ahead of the decedent, if he desired. Instead of doing this, he hastened out through the barroom, and to the point where decedent was coming out as already stated. Of course, there was no intent to kill, but the blow was inflicted in the heat of passion, and death ensued. That constitutes the crime for which he has been convicted. The unfortunate fatality doubtless was not anticipated, and would not ordinarily result from such a blow; but the assault was unjustifiable, and for his unlawful act the defendant must suffer the consequences.

We have carefully examined the record in the light of the claim made by appellant that remarks and statements were made by the trial justice during the course of the trial calculated to prejudice his rights, and that the jury were not fully instructed upon the law. The evidence satisfies us of defendant's guilt, and we are convinced that he has had a fair trial before an impartial court, and that no error prejudicial to his rights was committed.

It follows that the judgment should be affirmed. All concur.